# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 18, 2013

## GREGORY EIDSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. 303-2012     Dee David Gay, Judge**

**No. M2012-02482-CCA-R3-PC - Filed December 6, 2013**

The Petitioner, Gregory Eidson, appeals as of right from the Sumner County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered and that his trial counsel was ineffective. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Gregory Eidson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and C. Ronald Blanton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Petitioner has failed to include a copy of his judgments of conviction in the record for this appeal. However, it appears from the record that the Petitioner was indicted for aggravated assault, attempted premeditated first degree murder, and resisting arrest. On February 3, 2012, the Petitioner entered "best interest" pleas[1] to charges of aggravated assault

---

[1]Because the judgments of conviction are not included in the appellate record it is unclear whether the Petitioner entered pleas of nolo contendere or "best interest" guilty pleas pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).

and attempted second degree murder. Pursuant to the plea agreement, the charge of resisting arrest was dismissed. The Petitioner received an effective eleven-year sentence and was given credit for 469 days of pretrial incarceration. The remainder of the Petitioner's sentence was to be served on community corrections.

The following factual basis was provided to support the Petitioner's pleas: In the early morning hours of October 23, 2010, the Petitioner attacked his uncle, Danny Suttle, outside the home of their mutual friend, Timmy Vanatta. As Mr. Suttle left the house, the Petitioner approached him and, without saying anything to him, began to beat and kick Mr. Suttle for approximately thirty minutes. The Petitioner then poured gasoline over Mr. Suttle and attempted to set him on fire, but was unable to find a lighter. Mr. Suttle crawled under a car to get away from the Petitioner and eventually crawled to his home where he called the police. Mr. Suttle suffered several broken ribs, a punctured lung, and a concussion from the Petitioner's attack.

At the plea submission hearing, the trial court explained to the Petitioner that his "best interest" pleas would have the same effect as "a guilty verdict by a jury," and the Petitioner stated that he understood this. The trial court also explained that the Petitioner was to be placed on community corrections and what would occur if he violated the terms of his release. The Petitioner stated that he understood his sentence and had no questions about it. The Petitioner stated that it was his signature on the plea agreement, that he had reviewed the agreement with trial counsel, and that he understood the terms of his plea agreement. The Petitioner also stated that no one had coerced him into accepting the plea agreement and that he understood the constitutional rights he was waiving by entering the pleas.

At the conclusion of the plea submission hearing, the Petitioner was released on community corrections. On April 25, 2012, the Petitioner filed a petition for post-conviction relief alleging that he received ineffective assistance from his trial counsel and that his "best interest" pleas were not knowingly and voluntarily entered. At the post-conviction hearing, the Petitioner testified that he wanted to take his case to trial and was pressured into accepting "best interest" pleas by trial counsel. The Petitioner claimed that he was unaware his "best interest" pleas would have the same effect as guilty pleas. The Petitioner also claimed that trial counsel never explained to him the terms and conditions of his release on community corrections.

The Petitioner testified that he accepted the State's plea offer because his grandmother and his girlfriend had "pressured [him] into taking it" by crying when he told them he wanted to take his case to trial. The Petitioner also testified that he accepted the plea agreement because he felt trial counsel was not prepared for trial. The Petitioner claimed that trial counsel refused to investigate his claim of self-defense. The Petitioner also claimed that trial

counsel failed to interview or call several witnesses at his preliminary hearing. According to the Petitioner, Timmy Vanatta, Tiffany Vanatta, and Robert Cleveland all had information that would bolster his claim of self-defense, but all three had died prior to the plea submission hearing.

The Petitioner denied that he assaulted Mr. Suttle. Instead, the Petitioner claimed that Mr. Suttle fell on his face after the Petitioner "swung at" him. The Petitioner further claimed that Mr. Suttle threatened to "burn [him] up" and poured gasoline on his truck. To stop Mr. Suttle, the Petitioner "knocked him down," causing the gas can to fly into the air and spill gasoline on both of them. The Petitioner admitted that while Mr. Suttle was on the ground, he "poured [gasoline] down the crack of his rear end," but claimed that he never attempted to set Mr. Suttle on fire. The Petitioner admitted on cross-examination that Mr. Vanatta and Ms. Vanatta did not see the incident with Mr. Suttle because they were asleep at the time. The Petitioner also admitted that trial counsel had interviewed Mr. Cleveland prior to his death.

On cross-examination, the Petitioner admitted that he was familiar with the criminal justice system, having been convicted of driving under the influence on four occasions as well as several other offenses. The Petitioner also admitted that the trial court informed him at the plea submission hearing that his "best interest" pleas would have the same effect as a guilty verdict by a jury. The Petitioner further admitted that he had gone through four different lawyers before trial counsel was appointed to represent him. The Petitioner acknowledged that while this case was pending, he had written several letters to the prosecutor asking for a plea agreement and to be released on probation.

Catherine Britt testified on the Petitioner's behalf at the post-conviction hearing. Ms. Britt testified that she was the Petitioner's fiancé and lived with him at the time of the assault on Mr. Suttle. Ms. Britt testified that she could have given testimony favorable to the Petitioner but that she was not called as a witness at the preliminary hearing. However, Ms. Britt admitted that she "did not observe the incident" because she was in the shower at the time. Instead, Ms. Britt claimed that she could testify that the police officers used excessive force when they arrested the Petitioner.

Trial counsel testified that he recalled speaking to the Petitioner about what a "best interest" plea was and what effect it would have. Trial counsel could not specifically recall if he went over the terms and conditions of the Petitioner's community corrections sentence with him but testified that he would "typically go over that with all [his] clients that go on community corrections." Trial counsel testified that he did not call any witnesses at the preliminary hearing because he did not "want to tip off the [State] as to what avenues [he] might [have taken] at trial." Trial counsel further explained that the burden was so low in

a preliminary hearing that he was "not inclined to give [the State] any more information than [it] need[ed]."

Trial counsel testified that in investigating the case, he spoke to several of the police officers that responded to the scene. Trial counsel recalled that the Petitioner wanted him to speak with Mr. Vanatta, but trial counsel testified that based upon his investigation, he did not "see where Mr. Vanatta would have been helpful in this case." Trial counsel did not recall the Petitioner asking him to speak with Ms. Britt or call her at the preliminary hearing. With respect to Mr. Cleveland, trial counsel testified that he did not call him at the preliminary hearing because he was incarcerated at the time. Trial counsel testified that he spoke with the Petitioner several times about this case but that every time the Petitioner was more concerned with a civil case against the arresting officers.

Trial counsel testified that he had the Petitioner submit to a mental health evaluation to determine if there was a mental health defense because the Petitioner had a history of mental health issues. Trial counsel also testified that he investigated the Petitioner's "tumultuous history" with Mr. Suttle and the Petitioner's claim that Mr. Suttle had sexually assaulted him when he was younger as possible defenses. According to trial counsel, the Petitioner was adamant at times about taking his case to trial. However, trial counsel identified several letters sent to him by the Petitioner in which the Petitioner asked for him to negotiate a plea agreement with the State and specifically asked for an agreement allowing him to be released on community corrections. The Petitioner stated in these letters that he would be willing to accept a sentence of eight years.

In one letter written to trial counsel, the Petitioner stated that he did not "intentionally assault" Mr. Suttle. The Petitioner further stated that he did not understand why the prosecutor was "being so stubborn" because he had "abandoned intent when [he] pulled off [Mr. Suttle's gasoline soaked] blue sweater" and went back inside the house. Trial counsel testified that while the Petitioner had been indecisive about accepting a plea agreement at times, he believed "everything changed" when the State reduced its offer from thirteen to eleven years and agreed to dismiss the charge of resisting arrest. Trial counsel explained that the Petitioner "really hung his hat on . . . [the fact] that he wasn't guilty of doing anything to the officers" and that the Petitioner believed that he would be in a better position to pursue his civil case if he was placed on community corrections.

At the conclusion of the hearing, the post-conviction court dismissed the Petitioner's petition for post-conviction relief. The post-conviction court concluded that the Petitioner was not a credible witness. The post-conviction court noted that the Petitioner had numerous prior convictions spanning twenty-two years and that the Petitioner had repeatedly "told different versions" of what happened with Mr. Suttle. The post-conviction court found the

letters the Petitioner had written to both the prosecutor and trial counsel to be "very convincing" and that they made clear that the Petitioner "wanted to work toward . . . a settlement." The post-conviction court concluded that it was "a strain to believe that [the Petitioner] did anything other than knowingly and voluntarily enter" his "best interest" pleas.

The post-conviction court accredited the testimony of trial counsel over that of the Petitioner. The post-conviction court found that trial counsel thoroughly investigated the case and explored several possible defenses. The post-conviction court stated that it would not second guess trial counsel's tactic of not calling witnesses during a preliminary hearing. The post-conviction court concluded that trial counsel was not ineffective. Instead the post-conviction court stated that trial counsel's performance was "very good" and that he had "represented this client well." The post-conviction court further concluded that had the Petitioner's case gone to trial instead of accepting the plea agreement negotiated by trial counsel, the Petitioner likely "would have gone to the penitentiary for a substantially longer period of time instead of getting released on time served" with the remainder of his sentence to be served on community corrections.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in dismissing his petition for post-conviction relief. The Petitioner argues that he wanted to take his case to trial but was coerced into accepting the "best interest" pleas by trial counsel, his girlfriend, and his grandmother. The Petitioner further argues that trial counsel was ineffective because trial counsel made no effort to prepare for trial. The State responds that the "evidence clearly established" that the Petitioner chose to enter into the plea agreement and that he understood the nature of his actions. The State further responds that the Petitioner failed to show by clear and convincing evidence that trial counsel's performance was deficient in any way.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Here, the post-conviction court accredited the testimony of trial counsel over the Petitioner's testimony. In fact, there was overwhelming evidence to discredit the Petitioner's testimony that his "best interest" pleas were not knowingly and voluntarily entered. At the plea submission hearing, the trial court explained to the Petitioner that his pleas would have the same effect as a guilty verdict by a jury and that he was being placed on community corrections. The Petitioner stated under oath that he understood both of these facts. The Petitioner also stated that no one had coerced him into entering into the plea agreement. In addition to the transcript of the plea submission hearing, the Petitioner wrote numerous letters to both the prosecutor and trial counsel expressing his desire for a plea agreement and to be placed specifically on community corrections so that he could get out of jail. Indeed, the Petitioner was released immediately after entering his pleas.

With respect to trial counsel's performance, we again note that it is relevant only to the extent that it affects the voluntariness of the Petitioner's pleas. The evidence clearly demonstrates that the Petitioner wanted to enter into a plea agreement with the State so that he could be released from jail; therefore, trial counsel's performance had no impact on the voluntariness of the Petitioner's pleas. Furthermore, the evidence established that trial counsel thoroughly investigated the case and explored several possible defenses. The fact that trial counsel did not call any witnesses at the preliminary hearing was a sound trial tactic that we will not second guess on post-conviction review. The fact that three witnesses the Petitioner wanted to call at trial died before the plea submission hearing was outside the control of trial counsel. Accordingly, we conclude that the post-conviction court did not err in dismissing the petition for post-conviction relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE